UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HEARTWOOD, INCORPORATED and WILDERNESS WATCH, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:25-cv-01850-NJR |
| FELIPE CANO, Forest Supervisor of the Shawnee National Forest, and UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture, | ) ) ) ) ) | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD** |
| Defendants. | ) | |

Judicial review of cases brought under the Administrative Procedure Act is limited to the administrative record. Plaintiffs seek to expand the Administrative Record for this matter well beyond the documents necessary to adjudicate this case. Plaintiffs fail to overcome the presumption of regularity and fail to meet their burden of establishing that one of the narrow exceptions to the record review rule applies. The Court should reject Plaintiffs' attempt to expand the scope of the Record and deny their Motion to Complete and Supplement the Administrative Record, Dkt. No. 22.

## BACKGROUND

In January 2025, the Forest Service issued a Decision Memo to approve the Lusk Creek Wilderness Private Inholding Access Project, which will allow private landowners to continue using and conducting maintenance on a 2.5-mile route to access their parcels within the Shawnee National Forest. AR_223.[1] The inholdings are adjacent to the Lusk Creek Wilderness Area and

---

[1] The "AR_" citations refer to pages in the Administrative Record that was lodged with the Court on January 30, 2026, Dkt. No. 16.

existed before the wilderness area was designated. *Id.* Before the landowners can begin

maintenance work, the Forest Service must issue a special use permit, which the Forest Service

has yet to do. *See id.* Because the Project merely involves the continuing use of lands less than

20 contiguous acres, the Forest Service determined that the appropriate level of review under the

National Environmental Policy Act (NEPA) was a Categorical Exclusion, 36 CFR § 220.6

(e)(3).[2] AR_223-24.

 After the Forest Service approved the Project, Plaintiffs submitted a Freedom of

Information Act (FOIA) request to the Forest Service seeking documents related to the Lusk

Creek Wilderness Area. *See* Dkt. No. 23 at 2. Plaintiffs later submitted another FOIA request to

the Forest Service seeking an Operation and Maintenance Plan (O&M Plan) for the Project and

any associated special use permits (SUPs). *See* Dkt. No. 23 at 3. The Forest Service responded

to Plaintiffs' FOIA requests and produced relevant documents. *See id.*

 Plaintiffs filed suit in September 2025, alleging the Forest Service violated NEPA and

other statutes. Compl. ¶ 1, Dkt. No. 1. All Plaintiffs' claims are brought under the APA. *Id.*

After Defendants lodged the Administrative Record, Plaintiffs asked the Forest Service to

include several documents. The Forest Service agreed to supplement the Record with seven of

Plaintiffs' requested documents. *See* Dkt. No. 21. However, the Forest Service declined to

supplement the Administrative Record with other documents that Plaintiffs demanded, including

the four documents that are at issue now.

---

[2] Although the Forest Service's NEPA regulations have been rescinded, they were in place at the
time the Forest Service issued the Decision Memo and therefore apply in this case. *See National
Environmental Policy Act*, 90 Fed. Reg. 29,632, at 29,644 (July 3, 2025) ("USDA
subcomponents have discretion to continue using the versions of USDA and agency-specific
NEPA regulations in place before publication of this interim final rule[.]"); *see also* 7 C.F.R. §
1b.4(c)(21) (USDA's NEPA regulations listing Categorical Exclusions).

## STANDARD OF REVIEW

Judicial review of Plaintiffs' claims is governed by the APA, which provides that "the court shall review the whole record or those parts of it cited by a party," and makes no provision for extra-record review.  5 U.S.C. § 706; *see also Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) ("review is to be based on the full administrative record" that was before the agency at the time of its decision), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  The agency determines what constitutes the record, and "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

The Seventh Circuit recognizes that "[c]onfining the district court to the record compiled by the administrative agency rests on practical considerations that deserve respect."  *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 444 (7th Cir. 1990).  Agencies "deal with technical questions" and courts should not consider information "unless the evidence has first been presented to and considered by the agency."  *Id*.  When a challenge is brought against an agency action, inquiries are "determined solely on the basis upon which the action was administratively projected."  *Doraiswamy v. Secretary of Labor*, 555 F.2d 832, 840 (D.C. Cir. 1976).

"[T]he designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity."  *Hamrick v. Gen. Servs. Admin.*, No. 15-1023, 2015 WL 13590382, at *2 (C.D. Ill. Apr. 28, 2015) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)).  "[T]he court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary."  *Coal. to Protect Cowles Bog Area v. Salazar*, No. 2:12-cv-515, 2013 WL 595895, at *1 (N.D. Ind. Feb. 13, 2013).  After all, "[i]t is the agency that did the considering, and . . . is in a position to

*3 – Defs.' Resp. to Pls.' Mot. to Complete & Supp. the Admin. Record*

indicate initially which of the materials were before it—namely, were directly or indirectly considered." *Great Am. Ins. Co. v. United States*, No. 12-cv-9718, 2013 WL 4506929, at \*4 (N.D. Ill. Aug. 23, 2013), (quoting *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs,* 448 F. Supp. 2d 1, 5 (D.D.C. 2006)).  Plaintiffs bear the burden of overcoming the presumption of regularity to supplement the administrative record.  *Pac. Shores Subdivision*, 448 F. Supp. 2d at 5-6.

As for extra-record evidence, plaintiffs must establish that (1) the material is necessary to explain the agency's action; (2) the agency relied on the material and failed to include it in the record; (3) the material is necessary to explain complex or technical matters; or (4) the agency acted in bad faith.  *See USA Grp. Loan Servs., Inc. v. Riley,* 82 F.3d 708, 715 (7th Cir. 1996).  Plaintiffs must make a "'strong showing' that one of these exceptions applies before a court will allow extra-record inquiry.'"  *See Sokaogon Chippewa Community v. Babbitt*, 929 F. Supp. 1165 (1996) (quoting *Overton Park*, 401 U.S. at 420).  The Seventh Circuit has emphasized that a party seeking to expand the administrative record must demonstrate "exceptional circumstances" for doing so, *Cronin.,* 919 F.2d at 444, and that the exceptions to the record review rule are "rarely found" to apply, *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009).

## ARGUMENT

The Administrative Record contains the documents directly or indirectly considered by the Forest Service when it authorized the Project.  The Court need not look beyond the Forest Service's Record to address the merits of Plaintiffs' claims under the APA.  Nonetheless, Plaintiffs urge the Court to add four documents: (1) a *draft* O&M Plan, (2) a *draft* SUP, (3) an internal document referred to as a Request for Project Input (RPI), and (4) the Archeological Survey issued by the Illinois State Historic Preservation Office.  Plaintiffs cannot satisfy their

burden to show the Administrative Record is incomplete or needs to be supplemented.[3]  The Court should deny Plaintiff's Motion.

## I.      Plaintiffs fail to establish that extra-record documents are necessary.

Plaintiffs seek to add a draft O&M Plan and draft SUP.  Dkt. No. 23 at 11.  They argue these two draft documents fall under a narrow exception to the record review rule.  *Id.*  However, Plaintiffs incorrectly interpret both the nature and contents of the documents.  In doing so, Plaintiffs' proffered materials violate fundamental aspects of the APA's record review rule, including that the documents (1) constitute impermissible post-decisional materials attempting to challenge the sufficiency of a federal agency's decision, and (2) do not fit within any of the narrow exceptions to the record review rule.  By requesting to add these documents, Plaintiffs ask this Court to substitute its judgment for the agency's and break from the APA's deferential standard of review.

### A.  The draft O&M Plan and draft SUP are post-decisional documents that cannot be advanced to challenge the Forest Service's decision under the APA.

The first flaw with Plaintiffs' request for extra-record documents is that the documents were created *after* the Decision Memo.  AR_227.  Because these extra-record documents are post-decisional, considering these materials would violate one of the basic tenants of judicial review under the APA: "it is not appropriate 'for either party to use post-decision information as a new rationalization either for sustaining or *attacking* the Agency's decision.'"  *Wis. Elec. Power Co. v. Costle*, 715 F.2d 323, 326-27 (7th Cir. 1983) (quoting *Assoc. of Pac. Fisheries v.*

---

[3] Plaintiffs "appear to have conflated the act of supplementing the record with permitting consideration of extra-record evidence."  *Pac. Shores Subdivision*, 448 F. Supp. 2d at 5-6.  "[T]o *supplement* the record, the moving party must rebut the presumption of administrative regularity and show that *the documents to be included were before the agency decisionmaker*."  *Id.* at 6. (emphasis added).  If the documents were *not* before the agency decisionmaker, in other words the documents are *extra-record* materials, the moving party must prove one of the narrow exceptions to the record review rule applies.  *Id.*

*5 – Defs.' Resp. to Pls.' Mot. to Complete & Supp. the Admin. Record*

*EPA*, 615 F.2d 794, 811-12 (9th Cir. 1980)).  As the Seventh Circuit explained in *Wisconsin Electric Power*, multiple reasons exist for disallowing post-decisional information.  Among these reasons is that the new information has not gone through agency review and the decision-making process, so it "reaches a reviewing court untested by any procedures designed to assure its accuracy and completeness."  *Id.* at 327 (citation modified).  Instead of considering new materials in a judicial vacuum, the Court's role under the APA is to ensure that the agency decision "was rational in light of the record before the agency."  *Id.*

Further, these extra-record documents are still in draft form and have yet to be finalized. *See* Dkt. No. 23 at 34 (proposed O&M Plan *unsigned*); *id.* at 60 (draft SUP *unsigned*).  Thus, the contents of the draft O&M Plan and draft SUP are still in flux.  The Court should not base its review of the Forest Service's decision on documents with contents that could change.

The extra-record documents that Plaintiffs seek to add are drafts created *after* the Forest Service issued the Decision Memo.  These extra-record materials are thus impermissible post-decisional information attacking the Forest Service's decision, in violation of established APA tenets intended to prevent this Court from substituting its judgment for that of the agency.  The Court should deny Plaintiffs' request to consider the extra-record draft O&M Plan and SUP.

### B. The draft O&M Plan and draft SUP do not fall under any of the narrow exceptions to the record review rule.

In addition to violating core tenets of administrative law, Plaintiffs fail to establish that the draft O&M Plan and draft SUP fall under one of the narrow exceptions for extra-record review.  Despite the documents' post-decisional and draft nature, Plaintiffs assert that the documents are required to analyze whether "the agency considered all relevant factors," Dkt. No. 23 at 11.  Contrary to Plaintiffs' assertion, the Forest Service fully considered the relevant factors required for a project to qualify for a CE and documented its rationale in the Decision Memo.

AR_223-27.  In determining the relevant factors, "[c]ourts should afford substantial deference and should not micromanage those agency choices so long as they fall within a broad zone of reasonableness." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 169 (2025); *Friends of Bell Smith Springs v. U.S. Forest Serv.*, 3:25-cv-1377-NJR, 2025 WL 2623522, at *3 (S.D. Ill. Sept. 11, 2025) (Rosenstengel, J.) ("[B]ecause agency determinations under NEPA are typically fact-bound and therefore implicate agency expertise, '[t]he central principle of judicial review in NEPA cases is deference.'"); *see also Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council*, 435 U.S. 519, 555 (1978) ("[R]ole of a court in reviewing the sufficiency of an agency's consideration of environmental factors is a limited one.").

The Forest Service's regulations expressly set forth the basis for a CE and, thus, provide the precise relevant factors to be considered.  *See* 36 C.F.R. § 220.6(e)(3).[4]  Namely, projects involving the "approval, modification, or continuation of special uses that require less than 20 acres of land" are categorically excluded.  *Id.*  The Decision Memo explains that the 2.5-mile route will not exceed 20 acres.  AR_223-24.  Nonetheless, Plaintiffs contend that the draft O&M Plan and draft SUP are necessary to consider the relevant factors in this case.  Dkt. No. 23 at 11. According to Plaintiffs, the draft O&M Plan's horizontal clearing limits somehow suggest that "the actual ground disturbance will be significantly greater than what was scoped and authorized."  *Id*.  Not so.  The horizontal clearing limits refer to vegetation around the road and do not contribute to the total acreage of the Project.  *See* Dkt. No. 23 at 44.  Even if the horizontal clearing limits did contribute ground disturbance, which they do not, the Project would still qualify for this CE because it would not reach 20 acres.  *See* Dkt. No. 23 at 44.  In fact, the Forest Service would have had to authorize horizontal clearing nearly 27 feet on both

---

[4] *See supra* 2, n.2.

sides of the road—three times the current limit—to even reach the 20-acre maximum.  To the extent Plaintiffs contend that horizontal clearing limits require a technical explanation, *see* Dkt. No. 23 at 11, Plaintiffs fail to identify any explanation in the draft O&M Plan or draft SUP about what horizontal clearing limits are or how they are calculated.

Plaintiffs do not attempt to identify any other relevant factor or need for technical clarification and instead attack the draft O&M Plan and draft SUP because of supposed "boiler-plate language."  But Plaintiffs completely ignore these are *draft* documents that may change before being finalized.  Moreover, by implying that post-decisional documents can be used to draw conclusions about the decision-making process, Plaintiffs employ the very ad-hoc reasoning that the Seventh Circuit has cautioned against.  *See Wis. Elec. Power Co. v. Costle*, 715 F.2d at 326-27.  Plaintiffs have therefore failed to satisfy their burden in establishing that the Forest Service missed a relevant factor.

II.    **Plaintiffs fail to show that the Administrative Record is incomplete or will frustrate judicial review.**

Plaintiffs move to complete the Record with the RPI and Archeological Survey.  *See* Dkt. No. 23 at 6-7.  Plaintiffs cannot overcome the presumption of regularity because they fail to provide clear evidence proving that the Record is incomplete.  In particular, Plaintiffs have not identified "reasonable, non-speculative grounds for their belief that the documents" Plaintiffs seek to add to the Administrative Record "were considered by the agency and not included in the record." *Xirum v. U.S. Immigr. & Customs Enf't*, No. 1:22-cv-00801-TWP-KMB, 2025 WL 2687724, at *3 (S.D. Ind. Sept. 19, 2025) (quoting *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 12-13 (D.D.C. 2015)).  Nor have they made a "strong" or "substantial" showing that the Forest Service relied on materials not included in the record or acted in bad faith.  *See Great Am. Ins. Co.*, 2013 WL 4506929, at *4.

Rather, Plaintiffs attempt to surmount the presumption of regularity by arguing that the RPI reveals a supposed discrepancy in the Forest Service's rationale and that the Archeological Survey purportedly identifies a larger footprint for the Project.[5]  Dkt. No. 23 at 7-8.  The Forest Service properly excluded these documents, and the Court should defer to the agency's decision.

### A. The RPI is not part of the Administrative Record because it is a deliberative document.

In addition to failing to overcome the presumption of regularity, the Court has additional grounds to deny Plaintiffs' attempt to include the RPI because it is a deliberative document and is not necessary to complete the record or for judicial review.  Plaintiffs assert that the RPI's status as a "factual memo" warrants its inclusion in the Administrative Record.  Dkt. No. 23 at 6-7. The RPI, however, is a cursory summary of various specialists' initial review of a proposed activity and used exclusively as a deliberative document.  *See e.g.,* Dkt. No. 23 at 18 ("The following resources are being scoped *internally*." (emphasis added)).  For example, the Minimum Requirements Analysis Framework Guide includes the recreation analysis that the Forest Service considered.  AR_16-51.  Likewise, the Forest Service considered the wildlife analysis contained in the Biological Evaluation and Forest Plan Biological Opinion.  AR_90-101; AR_1823-1936.  These and other specialists' analyses provide more facts than the RPI does and are already in the Administrative Record.  *See* AR_55-89 (Soil Report); AR_52-53 (Hydrology and Soil Maps); AR_13-14 (Engineering Evaluation).

---

[5] Plaintiffs obfuscate the CE qualifications under 36 C.F.R. § 220.6 and incorrectly assert that the RPI relies on a different CE qualification than noted in the Decision Memo.  Dkt. No. 23 at 7 (comparing the RPI's "installation of a driveway" to the Decision Memo's "less than twenty acres of land").  However, "installation of a driveway" is an example of a use "less than 20 acres" under 36 C.F.R. § 220.6(e)(3)(v).  In other words, these CE qualifications fall into the *exact same* decision-making category.  The Forest Service has not listed two battling justifications but instead one with two levels of specificity.

The RPI's deliberative nature is underscored by the several comments and internal discussions throughout the document, *see* Dkt. No. 23 at 19-32.  The RPI is a draft and deliberative document meant to generate initial thoughts and reviews by specialists.  It is not a final document but rather an internal planning document and therefore properly excluded from the Administrative Record.

While the Seventh Circuit has not decided this issue, several courts of appeal have found that pre-decisional, deliberative documents are not part of the record to protect the mental processes of decisionmakers.  *See Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019); *see also Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 444 (9th Cir. 2024) (adopting *Oceana* and reasoning that "[o]ur holding rests on two well-settled principles governing judicial review of agency action under the APA."); *cert denied*, 145 S.Ct. 1048 (Jan. 13, 2025); *In re U.S. Dep't of Def. & U.S. Env't Prot. Agency Final Rule*, No. 15-3751, 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016) (per curiam) ("Deliberative process materials are generally exempted from inclusion in the record . . . ."); *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) ("[T]he actual subjective motivation of agency decisionmakers is immaterial as a matter of law" without a showing of bad faith); *cf. Franklin Sav. Ass'n v. Director, Office of Thrift Supervision*, 934 F.2d 1127, 1139 (10th Cir. 1991) (distinguishing administrative record documents from "working papers, synopses of all conversations, and other minutiae").

In *Oceana*, the D.C. Circuit affirmed that pre-decisional, deliberative documents are properly excluded from the administrative record and that an agency need not produce a privilege log of deliberative documents.  920 F.3d at 865.  "The District Court correctly observed that predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record."  *Id.* (internal

quotations omitted).  Deliberative documents are not part of the Record because they are
irrelevant, not because of privilege.  *Id.*  The D.C. Circuit's holding is consistent with the
Supreme Court's position that "inquiry into the mental processes of administrative
decisionmakers is usually to be avoided."  *Citizens to Pres. Overton Park*, 401 U.S. at 420; *see
also Save the Colo. v. U.S. Dep't of Interior,* 517 F. Supp. 3d 890, 897 (D. Ariz. 2021)
("[R]equiring disclosure of deliberative materials would 'chill the frank discussions and debates
that are necessary to craft well-considered policy.'").

Plaintiffs' attempt to distinguish *Oceana* fails because they conflate deliberative
documents with deliberative process *privilege*.  *See* Dkt. No. 23 at 8-10.  The Forest Service has
not asserted a privilege here.  Rather, deliberative materials are not part of the Record because
they are mere discussion of the evidence in the Record, not evidence on which the agency based
its decision.  *Fourth Corner Credit Union*, v. *Nat'l Credit Union Admin*., No. 15-cv-01634-RM-
KMT, 2016 WL 9735755, at *2 (D. Colo. Dec. 6, 2016) ("This court distinguishes between
collection and processing of evidence by the agency and deliberation by agency personnel
concerning the evidence before it.").

Other courts in this Circuit have also recognized that deliberative documents should not
be included in the Administrative Record.  *See e.g., Great Am. Ins. Co.*, 2013 WL 4506929, at *9
(declining to require privilege log for deliberative documents because it would "invite
speculation into an agency's predecisional process and potentially undermine the limited nature
of review available under the APA."); *Salazar*, 2013 WL 595895, at *4 ("[N]either the internal
deliberative process of the agency nor the mental processes of individual agency members are
proper components of the administrative record." (quoting *Portland Audubon Soc'y v.
Endangered Species Comm.,* 984 F.2d 1534, 1549 (9th Cir. 1993)).  In *Salazar*, the court found

that deliberative documents were "simply immaterial" in the context of APA review. 2013 WL 595895, at *4. Most recently, the Southern District of Indiana acknowledged the holding in the once seminal case *Miami Nation of Indians of Indiana v. Babbitt*, 979 F. Supp. 771 (N.D. Ind. 1996), but relied on *Oceana* to exclude deliberative materials. *Xirum v. U.S. Immigr. & Customs Enf't*, No. 1:22-cv-801-TWP-KMB, 2025 WL 2687724, at *4 (S.D. Ind. Sept. 19, 2025).

Finally, the Forest Service has not waived any privilege because none has been asserted. "A FOIA production request is an entirely discrete legal concept that bears no relation to the administrative record compiled for a court's review under the APA." *Del. Dep't of Nat. Res. & Env't Control v. U.S. Army Corp of Eng'rs*, 722 F. Supp. 2d 535, 544-45 (D. Del. 2010) (holding that FOIA production did not result in waiver for deliberative documents); *accord Salazar*, 2013 WL 595895, at *3 (finding that documents obtained through FOIA should not be included in administrative record because plaintiffs failed to overcome the presumption of regularity); *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002) (distinguishing the administrative record from "FOIA's emphasis on every scrap of paper that could or might have been created"), *aff'd,* 433 F.3d 852 (D.C. Cir. 2006).

Because deliberative documents are not withheld based on privilege, a FOIA production cannot waive what has not been asserted. "[T]he mere fact that a plaintiff possesses such a document does not render it part of an administrative record." *UnitedHealthcare Ins. Co. v. Azar*, 316 F. Supp. 3d 339, 348-49 (D.D.C. 2018) ("[P]ublic disclosure of deliberative materials does not necessarily mandate inclusion in the administrative record."); *see also Oceana, Inc. v. Guitterez*, No. 08-cv-00318-ESH-AK, 2009 WL 8725110, at *6 (D.D.C. May 28, 2009) (denying motion to supplement the record with all materials disclosed through FOIA because FOIA request is broader than documents considered by agency). Because of the limited nature of APA

inquiry, the Court should not admit deliberative documents simply because they were produced through FOIA.  The Court should therefore deny Plaintiffs' Motion.

### B.  The Archeological Survey is confidential and was not considered.

The Archaeological Survey is properly excluded from the Administrative Record because it contains no additional information that was relied on by the Forest Service in authorizing the Project.  The Archaeological Survey is confidential by regulation, 36 C.F.R. § 296.18, which prevents federal land managers from disclosing the locations of heritage sites.  Even if the Forest Service were to include this report in the Administrative Record, it would be substantially redacted, and the remaining information would merely echo the conclusions already included in the Administrative Record.  *See* AR_126-40.  The review and conclusion of the Forest Service's archaeologist are documented in the nine outgoing letters to the Tribal Historic Preservation Officers, their response letters, and the correspondence with the Illinois State Historic Preservation Office.  *Id*.  Each document notes that "there are no historic properties present within the area of potential effect."  *Id*.  These documents, along with the Decision Memo, adequately document the Forest Service's consideration of the various specialist evaluations contained in the confidential Archaeological Survey that Plaintiffs seek to add to the Record.

Plaintiffs attempt to overcome the presumption of regularity by claiming that the Archeological Survey provided "factual information" used in the consultation process and describes the Project.  Dkt. No. 23 at 8.  Plaintiffs primarily contend that the Archeological Survey describes the Project footprint as 19.73 acres.  Dkt. No. 23 at 8 (citing AR_128).  That acreage, however, refers to the *survey range* and originates from other documents within the Record.  *See generally* AR_126-40.  The survey acreage is not the *Project footprint*.  Documents that are already in the Record provide the total acreage surveyed.  *Id*.  More importantly, Plaintiffs have not brought any claims about cultural resources.  *See* Compl., Dkt. No. 1.  The

13 – *Defs.' Resp. to Pls.' Mot. to Complete & Supp. the Admin. Record*

Archeological Survey contains no information that is not already in the Record; thus, it is not necessary to complete the Record because it was not considered by the Forest Service in issuing the Decision Memo. Excluding the Archeological Survey does not frustrate judicial review, and Plaintiffs have not submitted strong and substantial evidence that the Forest Service considered the Survey. The Court should therefore deny Plaintiffs' request to include it.[6]

**CONCLUSION**

The Forest Service compiled and lodged an adequate Administrative Record that explains the basis for its decision. Plaintiffs' attempt to second-guess the Forest Service's fully supported decision based on documents that the agency did not consider is improper and should fail. The Court should deny Plaintiffs' Motion.

Respectfully submitted this 31st day of March 2026.

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

 */s/ Krystal-Rose Perez*
KRYSTAL-ROSE PEREZ, TX Bar No. 24105931
Trial Attorney
Natural Resources Section
150 M Street NE
Washington, DC 20002
202-532-3266
krystal-rose.perez@usdoj.gov

*Attorney for Defendants*

---

[6] The Survey's inadvertent publication does not undermine its confidentiality because the Forest Service took immediate steps to remedy the disclosure. *Cf. Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) (affirming that privilege had not been waived considering "time taken to rectify the error"). The Survey's substantial redactions made to produce it to Plaintiffs through FOIA further underscores its confidential nature.