**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

HEARTWOOD, INCORPORATED, et al.,  )
                                   )
      Plaintiffs,               )
                                   )
vs.                               )      Case No. 3:25-cv-1850-NJR
                                   )
FELIPE CANO, et al.,          )
                                 )
      Defendants.           )

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPLETE AND**
**SUPPLEMENT THE ADMINISTRATIVE RECORD**

The administrative record (the "Record") is incomplete without the Request for Project Input and the Archaeological Survey and should be supplemented with the Operation and Maintenance Plan and the form Special Use Permit so the Court can properly evaluate Plaintiffs' claims. Plaintiffs request this Court order their addition to the Record.

**I.**      **The Record is incomplete without the Request for Project Input and the Archaeological Survey.**

Plaintiffs have overcome the presumption of record completeness vis a vis the Request for Project Input (Exhibit 1 to Plaintiffs' Brief in Support of Motion to Complete and Supplement the Record, the "RPI" or "Exhibit 1") and the Archaeological Survey. Both documents were created by the Agency (and therefore were before it) at the time of the project decision. Defendants assert that they should nevertheless be excluded from the Record because they are deliberative, duplicative and confidential.

The RPI is not a deliberative or pre-decisional document. Instead, it is the Agency's categorical exclusion ("CE") review. In fact, it is subtitled "Categorical Exclusion Review". Exhibit 1 at p. 1. While the RPI may be predecisional in timing, it is decisional in function. Defendants fail to address the plain terms of the RPI. Doing so makes clear that the RPI outlines

the basis for the Agency's determination that the Project should be entitled to a NEPA CE under 36 CFR 220.6(e)(3) because it "requires less than 20 acres of NFS lands" and subsection (v) of 36 CFR 220.6(e)(3), which is applicable to "special uses for the installation of a driveway or other facilities incidental to the use of a private residence." Exhibit 1 at 3. No other document in the Record includes this level of analysis, and other documents even describe the CE differently. See, e.g., Decision Memo at LUSKAR000224 and MRAF Analysis at LUSKAR000017. The materials already in the Record are merely inputs. In contrast, the RPI is the only document that applies those inputs to the CE determination. The Record should include the Agency's synthesis, not just its pieces.

Further, Defendants admit that the driveway/private residence rationale contained in the RPI is a more specific articulation of the same CE laid out in the Decision Memo. Response in Opp. at 9, fn 5. This amounts to an admission that the RPI contains the most specific contemporaneous application of the CE to the Project and reinforces the importance of the RPI to an understanding of the Agency's reasoning.

Plaintiffs have also overcome the presumption of record completeness with respect to the Archaeological Survey. The Survey documents the Agency's investigation of the impact of the Project on cultural resources. Until just after the decision was rendered, the Survey was posted on the Agency's project page – showing its connection to the Project. Defendants do not dispute this, but assert that the Survey should be withheld because it is confidential and duplicative of other materials.

Defendants suggest that the larger project footprint described in the Survey and consultation letters refers to "survey area" rather than project footprint, making the Survey surplus. But the plain language of neither the Survey nor the consultation letters mention "survey

2

area," or contain any indication that "survey area" is somehow different than project footprint, instead stating that "[t]he proposed access road is approximately 2.5 miles long by 12 feet wide totaling approximately 19.73 acres." LUSKAR000126-136. Including the Survey in the Record is necessary to resolve the discrepancy.

The fact that the Survey may contain confidential information is also not reason to exclude it from the Record. Confidentiality concerns do not change the fact that documents before the Agency at the time of the decision must be included in a full administrative record. Public Employees for Envtl. Responsibility v. Beaudreau, 2012 U.S. Dist. LEXIS 199850, *26-27 (D.D.C. 2012). If they compromise a court's "ability to adequately review the administrative record" they are not appropriate. Calloway v. Harvey, 590 F. Supp. 2d 29, 36 (D.D.C. 2008); Int'l Longshoremen's Ass'n v. Nat'l Mediation Bd., 2006 U.S. Dist. LEXIS 4080, *12 n. 4 (D.D.C. 2006). If confidential information was "before the decision-makers at the time of the challenged decision", it must be included in an administrative record, the agency free to seek a protective order, redaction or *in camera review*. Public Employees for Envtl. Responsibility, 2012 U.S. Dist. LEXIS 199850 at *26-27. See also, Western Watersheds Project v. BLM, 2012 U.S. Dist. LEXIS 1068, *6-7 (D. Nev. 2012); Int'l Longshoremen's Ass'n, 2006 U.S. Dist. LEXIS at *12. The Survey should not be withheld from the Record wholesale and deprived of appropriate court evaluation.[1]

---

[1] Defendants have arguably waived any right to assert confidentiality protections over the material contained in the Survey, which was posted to the Agency's project page for more than a year, even though they assert they "took immediate steps to remedy the disclosure". It is difficult to see how a one-year delay can be termed an "immediate step."

3

**II.    This Court should supplement the Record with the Operation and Maintenance Plan and the Form Special Use Permit.**

The Operation and Maintenance Plan (Exhibit 2 to Plaintiffs' Brief, the "O&M Plan") and the form Special Use Permit (Exhibit 3 to Plaintiffs' Brief, the "SUP") are the only documents to fully describe the spatial and temporal scope of the Project. The O&M Plan indicates that the Project may involve the clearing of an 18-foot wide roadway – an area fifty percent larger than the roadway described in the Decision documents. Exhibit 2 at p. 3. No other documents clearly disclose this potential extent of disturbance. Similarly, the SUP is the only document that discloses information about the temporal duration of the Project. Exhibit 3 at p. 1. An eight-year permit term is not a fleeting or incidental authorization. The same provision in the SUP further states that expiration requires no notice, decision document, environmental analysis, or other documentation, confirming that the permit itself was intended to operate as a long-term authorization. If the lodged record omits the only identified document disclosing that duration, the Court cannot fully or properly evaluate the nature and scope of the action under review.

Plaintiffs seek the addition of these materials to the Record not to further some new attack on the Project, but so the Court have them to evaluate whether Defendants conducted an adequate review. [2] Consideration of extra-record information is appropriate when simply reviewing the administrative record is not enough to resolve the case. USA Group Loan Services v. Riley, 82 F.3d 708, 715 (7th Cir. 1996). See also, Esch v. Utter, 876 F.2d 976, 991 (D.C. Cir. 1989) (outlining the generally accepted exceptions "countenancing use of extra-record evidence", including "(2) when the agency failed to consider factors which are relevant to its

---

[2] Defendants bolster this point, attempting their own post-hoc explanation of the horizontal clearing limits in the O&M Plan. Response in Opp. at 7. Their rationalization drives home that the information in the O&M Plan is material to the Court's evaluation of whether the Agency took the required "hard look".

final decision", "(5) in cases where evidence arising after the agency action shows whether the decision was correct or not", and "(7) in cases arising under the National Environmental Policy Act"). Extra-record evidence often is essential in NEPA cases, so reviewing courts can determine whether the agency adequately considered the project's environmental effects. See, e.g., Nat'l Audubon Society v. Hoffman, 132 F.3d 7, 14-15 (2nd Cir. 1997); Asarco, Inc. v. U.S. EPA, 616 F.2d 1153, 1160 (9th Cir. 1980).

The draft status of these materials does not change the analysis. Even if the O&M Plan and SUP are subject to revision, they remain probative of the type and scope of authorization the Agency was preparing to issue. At minimum, the O&M Plan demonstrates that the Project's physical impact cannot be understood solely by reference to the acreage calculations contained in the Decision documents. Similarly, the draft SUP confirms that the Project's duration and operative terms bear directly on the scope of the authorization the Forest Service was moving forward to implement. See, e.g., Rocky Mt. Wild v. Kornze, 2015 U.S. Dist. LEXIS 198914, *20-31 (D. Colo. 2015) (ordering supplementation of the record with materials the agency should have relied upon in making its decision).

Nor does the post-decisional status of these materials prohibit their inclusion in the Record. Courts may supplement an administrative record with post-decision information that "can be deemed a clarification or an explanation of the original information before the Agency" or demonstrates that the agency "proceeded upon assumptions that were entirely fictional or utterly without scientific support". Ass'n of Pac. Fisheries v. EPA, 615 F.2d 794, 811-12 (9th Cir. 1980). Plaintiffs seek the addition of the O&M Plan and the SUP to the Record for precisely such a reason – to enable this Court to conduct a full and meaningful evaluation of the adequacy of the Agency's environmental review.

## CONCLUSION

Plaintiffs respectfully request this Court to order completion of the administrative record in this case with the RPI and the Archaeological Survey, and to order supplementation of the Record with the O&M Plan and the SUP.

Respectfully Submitted,

*/s/ Sarah Rubenstein*
Sarah Rubenstein (Illinois Bar No. 6244789)
Bruce Morrison (Illinois Bar No. 6279301)
Great Rivers Environmental Law Center
4625 Lindell Blvd., Suite 200
St. Louis, MO 63108
Tel: 314-231-4181
srubenstein@greatriverslaw.org
bamorrison@greatriverslaw.org

*/s/ Daniel Brister*
Daniel Brister (Montana Bar No. 64922907)
Wilderness Watch
P.O. Box 9175
Missoula, Montana 59807
Tel: 406-542-2048
danb@wildernesswatch.org
*Application for Admission Pro Hac Vice Pending*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of April, 2026, a true and correct copy of the foregoing was filed electronically on PACER to be served by operation of the Court's electronic filing system upon all parties of record.

*/s/ Sarah Rubenstein*

6