**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**HEARTWOOD, INC. and
WILDERNESS WATCH, INC.,**

**Plaintiffs,**

**v.**

**FELIPE CANO and
UNITED STATES FOREST SERVICE,**

**Defendants.**

**Case No. 3:25-CV-01850-NJR**

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiffs Heartwood, Inc. and Wilderness Watch, Inc. move this Court to complete the Administrative Record ("AR") with two documents, the Request for Project Input ("RPI") and the Archaeological Survey/Testing Short Report, and to supplement the AR with two documents, the Operation and Maintenance Plan ("O&M Plan") and the Special Use Permit for the Project ("SUP"). Defendants oppose this Motion.

## BACKGROUND

### I. Factual Background

Congress enacted the Wilderness Act in 1964, 16 U.S.C. § 1331 *et seq.*, with a charge of "secur[ing] for the American people of present and future generations the benefits of an enduring source of wilderness" by "creating and administering wilderness areas for the use and enjoyment of the American people" and "to provide for the protection of these areas, and the preservation of their wilderness character." § 1131(a); *see* Doc. 1 at ¶ 2–3. Toward this end, Congress, as part of the Illinois Wilderness Act, ordered the United States Forest Service to administer the 6,293-acre Lusk Creek wilderness area in the Shawnee National Forest in accordance with the provisions of the Wilderness Act. (Doc. 1, ¶¶ 21–22).

Section 1133(c) of the Wilderness Act expressly prohibits permanent roads "except as necessary to meet minimum requirements for the administration of the area for the purpose of this chapter . . . there shall be no temporary road, no use of motor vehicles, . . . and no structure or installation within any such area." § 1133(c); *see also* Doc. 1, ¶ 4.

In January 2025, the Forest Service authorized construction and maintenance of a permanent, 2.5 mile road (the "Project") through Lusk Creek. (Doc. 1, ¶ 1). The road would "facilitate access to two private parcels" in and adjacent to Lusk Creek. (Doc. 1., ¶ 27). There is one one-acre parcel and one 87-acre parcel whose landowners are requesting a long-term special use permit authorizing access through Lusk Creek. (*Id.* at ¶ 32).

The Forest Service first prepared a Minimum Requirements Analysis Framework (the "MRAF") in August 2024 to evaluate whether to authorize construction and upkeep of a permanent road and motorized access through the Lusk Creek Wilderness. (*Id.* at ¶ 30). The need for the Project arose from the 1980 Alaska National Interest Lands Conservation Act, as well as landowner requests for a long-term special use permit authorizing motorized access through Lusk Creek. (*Id.* at ¶ 32). Plaintiffs imply that the purported justifications for the Project are unclear at best. In one instance, the Agency points to the preservation of wilderness character and in others, facilitating access to the two private parcels of land. (*Id.* at ¶¶ 30–40). A key point of contention appears to be that the MRAF states that year-round motorized access is a necessity but does not attempt to analyze less obtrusive, shorter, or simpler alternatives to the Project. (Doc. 1). The Forest Service approved the Project via a Categorical Exclusion ("CE"), allowing the Agency to bypass preparation of an Environmental Assessment ("EA") and an Environmental Impact Statement ("EIS"). (Doc. 1., ¶ 6). This circumvention, Plaintiffs allege, is a violation of the National Environmental Policy Act ("NEPA").

At bottom, Plaintiffs allege that the United States Forest Service's January 21, 2025

decision to authorize construction and maintenance of the 2.5 mile road—the Lusk Creek Wilderness Private Inholding Access Project (the "Project")—is unlawful under the Wilderness Act, the Alaska National Interest Lands Conservation Act (ANILCA), the National Environmental Policy Act, and the National Forest Management Act (NFMA).

**II. Plaintiffs' Motion**

In cases brought under the Administrative Procedure Act ("APA"), judicial review of an agency decision is typically limited to the administrative record. *Kappos v. Hyatt*, 566 U.S. 431, 438 (2012).

Plaintiffs claim that the AR put forth by Defendants in this matter is neither complete nor adequate for the Court to thoroughly review the Agency's Decision. (Doc. 23 at p.1). Plaintiffs argue four documents that are necessary for the Court to determine the reasonableness of Defendants' decision to sanction the Lusk Creek Inholding Access Project are missing from the AR: (i) the Request for Project Input ("RPI"); (ii) the Archaeological Survey/Testing Short Report; (iii) the Special Use Permit ("SUP"); and (iv) the Operation and Maintenance Plan ("O&M Plan"). (*Id* at pp. 1–2).

*A. The RPI.* The Request for Project Input, subtitled, "Categorical Exclusion Review or Preliminary Environmental Assessment Review," and issued on October 9, 2024, requests input from various agency staffers regarding the proposed Project. (Doc. 23 at pp. 1–2). According to this document, the purpose of the Project is "to provide access by motorized use year-round needed to fulfill ANILCA obligations for reasonable use and enjoyment of the land by the inholding owners, and to support the historic use requested on the special use permit application by the inholding owners.[1]" (Doc. 1, ¶ 42). The RPI also documents the Forest Service's application

[1] The inholding owners refer to the private landowners who possess the one-acre piece of land, as well as the 87-acre parcel. There is some tension as to the "inholding" classification which the Court does not deem pertinent at this time.

and evaluation of the National Environmental Policy Act's categorical exclusion criteria for the Project under 36 C.F.R. § 220.6(b). (*Id*).

*B.* *The Archaeological Survey.* The Forest Service drafted the Survey upon consulting the Illinois State Historical Preservation Office, along with various other state and federal agencies, in order "to ascertain whether culturally significant sites would be impacted by the Project." (Doc. 23 at p. 2). The Survey played a role in empowering the Forest Service to declare that the Project would not have archaeological impacts and in its decision to forgo further NEPA review. (*Id*). Wilderness Watch was provided a copy of the Survey in response to a Freedom of Information Act request. (*Id.* at pp. 2–3).

*C.* *The O&M Plan.* The Operation and Maintenance Plan discusses the scope of the road construction triggered by the Project. (Doc. 23 at p. 3). It also includes a map detailing the proposed route to be created and maintained by the Project and specifies the vehicles to be used in construction and maintenance along with various other logistics. (*Id*). This document was produced as part of a FOIA request to Plaintiffs in March 2026. (*Id*).

*D.* *The SUP.* The Special Use Permit ("SUP") authorizes individual landowners to construct, use, and maintain the road sanctioned by the Project. (Doc. 23 at p. 3).

## LEGAL STANDARD

In actions governed by the Administrative Procedure Act, judicial review is based on the Administrative Record compiled by the decision-making agency. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973). The decision-maker, the federal administrative agency, is charged with "examin[ing] the relevant data and articulat[ing] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). The Administrative Record consists of all

the documents and materials compiled by the agency that were before the agency at the time the challenged decision was made. *Board of Trustees of United Food and Commercial Workers Unions & Employers Pension Plan v. Pension Benefit Guar. Corp.,* 2026 WL 1430541, at *2 (E.D. Wis. May 21, 2026) (cleaned up); *see also Ramirez-Estrada v. I.N.S.*, 1997 WL 160300, at *2 (7th Cir. 1997) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)). A court's APA review is based on the "whole record," 5 U.S.C. § 706, which includes all materials directly *or* indirectly considered by agency decisionmakers. *Oceana, Inc. v. Ross*, 290 F.Supp. 3d 73, 77 (D.D.C. 2018) (emphasis added).

Federal agencies are entitled to a level of respect in their compilation of the administrative record, *see Cronin v. U.S. Dep't of Agriculture*, 919 F.2d 439, 444 (7th Cir. 1990), and the presumption that it is, in fact, complete. *Xirum v. U.S. Immigration & Customs Enforcement*, 2024 WL 1796121 at *3 (S.D. Ind. Sept. 19, 2025). One may overcome this presumption by identifying reasonable, non-speculative grounds for their belief that the documents they seek to add to the Administrative Record *were* considered by the agency and not included in the record. *Id.*

Courts also may supplement the AR with additional materials: (1) if necessary to determine whether the agency has considered all relevant factors and has explained its decision; (2) when the agency has relied on documents not in the record; (3) when supplementing the record is necessary to explain technical terms or complex subject matter; or (4) when the plaintiff makes a showing of the agency's bad faith. *Harrisonville Telephone Co. v. Ill. Commerce Comm'n*, 472 F.Supp.2d 1071, 1074-1075 (S.D. Ill. 2006) (cleaned up).

## DISCUSSION

### I. Defendants are ordered to complete the Administrative Record with the RPI and the Archaeological Survey.

It is crucial that a court has the "whole record" before it when reviewing a decision under

the APA. *Miami Nation of Indians of Indiana v. Babbitt*, 979 F. Supp. 771, 775 (N.D. Ind. 1996). The Request for Project Input reads as a factual memorandum to the untrained eye: it identifies decisionmakers, discusses scoping dates, and catalogs a worksheet of legal requirements to be satisfied for a categorical exclusion to apply. (Doc. 23 at pp. 6–7). Unparalleled in its depth of analysis, it will aid the Court in the "thorough, probing, and in-depth review" that it is required to undertake to assess the Agency's decision. *See Babbitt*, 979 F. Supp. at 776 (citation modified). It is helpful in gaining an understanding of how and why Defendants applied a Categorical Exclusion classification to the Project.

The threshold question for the Court to answer when determining whether the RPI should be included in the AR is whether it was considered by the agency in making its decision to approve the Project. *See Milwaukee Inner City Congregations Allies for HOPE v. United States DOT*, 2026 LEXIS 15481, *7 (E.D. Wis. 2026) (noting that to overcome the presumption that the AR produced by the agency is complete, plaintiffs must identify reasonable, non-speculative grounds for their belief that the documents they seek to add to the AR were, in fact, considered by the agency). Neither party contests that it was considered by the Forest Service; the dispute arises for other reasons.

Defendants argue the RPI is not a part of the AR as it is a deliberative document. A "deliberative" document reflects policy or decision-making processes, rather than purely factual or investigative matters. *Fares Pawn, LLC v. Indiana*, 2012 WL 3580068, at *3 (S.D. Ind. Aug. 17, 2012) (cleaned up). Deliberative documents are typically not part of an administrative record because they would reveal the mental processes of administrative decisionmakers, *see City of Des Plaines v. Metropolitan Sanitary Dist. Of Chicago*, 552 F.2d 736, 739 (7th Cir. 1977), and would jeopardize the "frank discussions and debates that are necessary to craft well-considered policy." *Save the Colorado v. United States Dep't of the Interior*, 517 F. Supp. 3d 890, 897 (D. Ariz. 2021)

(internal citations omitted).

There are no discussions described in the RPI. What are present are *descriptions* of decision-making processes and actions taken by several individuals. No mental processes are revealed—if anything, policies and guides that were *already* in place are noted. (Doc. 23 at pp. 6, 12–15). There are no subjective motivations or thoughts of an agency decisionmaker. No meeting minutes or notes are detailed. The RPI, instead, reflects factual and investigative matters. The document was drafted after the necessary individuals completed their analysis of the various specialized aspects of a categorical exclusion review. (Doc. 23 at p. 2). Defendants assert that deliberative documents are "mere discussion[s] of evidence in the Record, not evidence on which the agency based its decision." (Doc. 28 at p. 11 (citing to *Fourth Corner Credit Union v. Nat'l Credit Union Admin.*, 2016 WL 9735755, at *2 (D. Colo. Dec. 6, 2010))). As the RPI is not a discussion of evidence in the Record, but instead evidence supporting the Agency's Categorical Exclusion determination and eventual approval of the Project, it is not deliberative. Further, *Fourth Corner Credit Union v. Nat'l Credit Union Admin.* notes that "collection and processing of evidence by the agency" is separate from "deliberation by agency personnel." *Id*. The Court finds it difficult to comprehend the RPI as something other than a collection and processing of evidence in its compilation of inputs by various individuals who had processed the evidence and arrived at their respective conclusions. Plaintiffs appear to be correct—while the RPI was issued before the final decision of the Agency was rendered, it is a decisional document in function.

The Court abstains from a discussion of the deliberative process privilege seeing as Defendants have not made any such assertions.

Plaintiffs seek to include the Archaeological Survey in the AR as another document the Agency considered before approving the Project. (Doc. 23 at p. 7). The Survey, Plaintiffs contend, contains factual information upon which the Agency relied. (*Id.* at p. 2). Defendants' principal

counterarguments against the Survey's inclusion in the AR are that it is (1) confidential, (2) duplicative, and (3) was "not considered by the Forest Service in issuing the Decision Memo." (Doc. 28 at pp. 13–14). Why the Agency would undertake the time and expense of creating the Survey (including the labor of consulting various other state and federal agencies) all to simply ignore it when arriving at its ultimate decision is confounding. This position strains credulity, and the Court is not persuaded.

Defendants also assert the Survey "contains no additional information" that was relied on by the Agency. But "a document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record." *Babbitt*, 979 F. Supp. at 777.

The Court is similarly not persuaded by Defendants' argument that the Survey should not be a part of the AR because it is "confidential." A redacted copy was provided to Plaintiff Wilderness Watch following a FOIA request. (Doc. 23 at p. 2). Further, the Forest Service published an *unredacted* version of the Survey on its website. (*Id.* at pp. 2–3).[2] The confidential nature of the document is not otherwise revived by Defendants' referral to its "confidential[ity] by regulation." (Doc. 28 at p. 13). The Court has at its disposal various ways of protecting and reviewing sensitive, confidential documents and no convincing argument has been made to suggest that the Court is otherwise unequipped. Defendants shall file the Archaeological Survey under seal with the Court and provide Plaintiffs a copy with any necessary redactions.

## II. Plaintiffs have not made the requisite showing to supplement the record with the draft Operation & Maintenance Plan and the Special Use Permit.

A reviewing court's decision must stand or fall based on the record that was before the agency when the decision was announced. *Wis. Elec. Power Co. v. Costle*, 715 F.2d 323, 326 (7th Cir.

[2] Inadvertent disclosures occur and if prompt, reasonable steps are taken to rectify the situation, the underlying material's confidentiality should not be compromised or otherwise undermined. That does not appear to be the situation here. Publication to a public-facing website of the Survey, in its unredacted entirety, for over a year, certainly undermines its confidentiality.

1983). Documents and materials that were not before the agency when it came to its challenged decision are post-decisional and, consequently, irrelevant. *See id.* at 326-27 (noting that for either plaintiff or defendant to use "post-decision information" as reason to attack or sustain an agency's decision is inappropriate). The only method by which post-decisional information may be included in the AR is if one of the four enumerated exceptions applies. And a party seeking to supplement the record must make a "strong showing" that such exception applies. *Babbitt*, 979 F. Supp. at 779; *see also Protect Our Parks, Inc. v. Buttigieg*, 39 F.4th 389, 402 (7th Cir. 2022). Even so, the Seventh Circuit has *rarely* found these exceptions to apply. *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 857 (7th Cir. 2009) (emphasis added).

The draft O&M Plan and draft SUP are post-decisional documents and, therefore, must qualify as one of the exceptions in order to be considered by this Court. Each exception will be addressed in turn. First, Plaintiffs do not seem to argue bad faith on the part of the Forest Service so this exception may quickly be dispensed. They also do not argue that Defendants relied on the SUP and O&M Plan in coming to their decision. (After all, these documents postdated the Decision.) While there is certain niche terminology and industry jargon in the documents before the Court, it is not so nebulous and sophisticated that additional explanatory materials appear necessary. There is one exception that remains, that which allows supplementation to determine whether the agency considered all relevant factors and explained its decision.

Plaintiffs assert these documents are vital to have a clear understanding of the Project, arguing that the two documents reveal a conflict in the scope of the Project. Their purported significance also derives from the fact that they are the only documents that fully describe the "temporal and spatial scope of the project" and reveal a "significant" increase in the land that will be impacted by the Project. (Doc. 23 at p. 11; Doc. 29 at p. 4). The SUP and the O&M Plan remain in draft form, and there is no indication that the representations made by the Agency

within them are final—if anything, it is the opposite.[3] The documents and their contents are in flux. To this, Plaintiffs respond that "they remain probative of the type and scope of authorization the Agency was preparing to issue." (Doc. 29 at p. 5). While Plaintiffs claim that without the O&M, the Project's physical impact cannot be understood by assessing what is currently in the AR, they have not put forth an adequate explanation as to how this discrepancy is consequential to the ultimate propriety of the Decision.

Additionally, Plaintiffs argue that these documents, even if they are post-decisional, can be included in the AR if they clarify or explain the information already before the Agency or if the documents demonstrate that the agency proceeded upon fictional assumptions or those without any scientific support. Based on Plaintiffs' proffer of what is contained in the SUP and O&M Plan, the documents' elucidatory nature is not readily apparent. While materials that reveal ineptitude on the part of an Agency or a sheer lack of scientific support should certainly be before the Court, Plaintiffs have not demonstrated that that is the case here. It would be inappropriate for the Court to rely on these documents when evaluating the Agency's Decision. (*See* Doc. 28 at p. 6).

## CONCLUSION

It is improper to allow federal defendants to unilaterally determine what shall constitute an administrative record and limit the scope of a court's inquiry. *See Lloyd v. Illinois Reg'l Transp. Auth.*, 548 F. Supp. 575, 590 (N.D. Ill. 1982). Accordingly, as the Forest Service has not offered a complete rendition of the Administrative Record to assess the lawfulness of the Project, they are

[3] Interim internal agency documents, memoranda, and communications may sometimes be part of the AR, but their relevancy is not sufficient for their inclusion here. Plaintiffs' citation to *Bethlehem Steel Corp. v. EPA* does not carry the day; the agency notes and communications in *Bethlehem Steel* were relevant because the plaintiffs asserted that agency personnel improperly relied on certain communications—which necessitated the Court's review. 638 F.2d 994, 1000 (7th Cir. 1980). No similar allegations of impropriety on the part of personnel are made by Plaintiffs here warranting review of the O&M Plan and the SUP.

ordered to complete the AR with the RPI and Archaeological Survey. However, Plaintiffs have not cleared the bar to supplement the AR with the O&M Plan and SUP, and Defendants are not presently required to supplement the AR with these two documents.

**IT IS SO ORDERED.**

**DATED: September 30, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**